Filed 1/13/22  Old Republic Gen. Ins. v. Alamillo Rebar CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| OLD REPUBLIC GENERAL INSURANCE CORP., | B312662 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV20039) |
| v. | |
| ALAMILLO REBAR, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Brothers Smith and Horace W. Green for Defendants and Appellants.

TheDewberryfirm and Robert H. Dewberry for Plaintiff and Respondent.

# INTRODUCTION

Old Republic General Insurance Corporation obtained a default judgment against four related entities: Alamillo Rebar, Inc., Southwest Transportations Systems, Inc. (Southwest), 325 West Channel Rd., LLC, and 361 West Channel Rd., LLC (collectively, the Alamillo Entities). The Alamillo Entities moved to vacate the default judgment and set aside the entries of default under Code of Civil Procedure section 473, subdivision (b),[1] arguing the court entered the defaults as a result of their mistake or excusable neglect. The trial court denied the motion, ruling that it was untimely and that the entities did not show mistake or excusable neglect. The Alamillo Entities appeal. Because both of the court's rulings were correct, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Old Republic Obtains a Default Judgment Against the Alamillo Entities*

Old Republic filed this action against the Alamillo Entities, alleging they were alter egos of each other and operated as part of a single business. Old Republic alleged it entered into an agreement to provide Alamillo Rebar with automobile liability, workers' compensation, and employers' liability insurance. Old Republic alleged the Alamillo Entities owed $3,075,938.15 under the agreement: $743,313.52 in unpaid premiums and fees, $318,541.63 in unpaid monthly deductibles, and $2,014,083.00 in

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

collateral to secure the payment of unpaid deductibles and the estimated outstanding ultimate loss.

When Old Republic filed this action in May 2020, each of the Alamillo Entities had on file with the Secretary of State a statement of information that listed Christopher Pereira, at an address (the same in each statement) in Benicia, California, as the designated agent for service of process. A registered process server tried to serve Pereira at the Benicia address, but a receptionist informed the process server the Alamillo Entities had moved from that address a year ago. The process server eventually served Pereira at his residence in June 2020.

Joe Alamillo (Alamillo) is the chief executive officer of Alamillo Rebar and Southwest. Alamillo is also the trustee of the Joe M. Alamillo and Jean C. Alamillo Living Trust, which in turn is a member of 325 West Channel Rd. and 361 West Channel Rd. At his deposition, Alamillo admitted that in June 2020 Pereira sent him by email a copy of the complaint, but that he (Alamillo) decided not to respond to the complaint. Alamillo said that he recognized the complaint as a lawsuit, but that he did not "see it necessary" to respond because he "was not served on it." Instead, he just "filed it."

Between July 2020 and August 5, 2020 the trial court entered the default of each of the Alamillo Entities. In January 2021 Old Republic filed a request for a default judgment against all of the entities, and on February 10, 2021 the trial court entered a default judgment in the amount of $1,944,081.86

($1,943,346.86 in damages and $735 in costs), jointly and severally, against the Alamillo Entities.[2]

> B.  *The Alamillo Entities File a Motion To Set Aside the Default Judgment, Which the Trial Court Denies*

On February 23, 2021 the Alamillo Entities filed a motion under section 473, subdivision (b), to vacate the default judgment and set aside the entries of default. The entities contended the trial court entered their defaults and the subsequent default judgment as a result of the Alamillo Entities' mistake or excusable neglect. The Alamillo Entities asserted that, at the time Alamillo learned of the lawsuit, he did not believe Old Republic had properly served any of the defendants. The entities also explained that Alamillo "did not believe that Southwest, 325 West Channel Road, LLC and 361 West Channel Road, LLC were parties to the written contract which was at issue" and that Alamillo "was focused on saving his business."

In opposition to the motion, Old Republic argued the motion was untimely because the Alamillo Entities filed it more than six months after the court had entered the defaults of the entities. Old Republic also argued on the merits that Alamillo's decision to ignore the complaint based on his belief the entities were not properly served was unreasonable because he was not a

---

[2]   In its request for a default judgment, Old Republic sought $1,944,081.86 in damages, rather than the $3,075,938.15 it requested in its complaint. Although it is not entirely clear, it appears the discrepancy arises out of the fact Old Republic received money from the issuer of an irrevocable letter of credit the Alamillo Entities had provided as collateral for its obligations under the agreement.

4

lawyer.  In reply, the Alamillo Entities argued for the first time that, even if the motion for relief under section 473 was untimely, the court could still vacate the default judgment and set aside the entries of default under the court's "inherent equity power."

The trial court denied the motion.  The court ruled the motion was untimely because the Alamillo Entities did not file it within six months of the entries of default.  The court also ruled that, "[e]ven if the motion were not untimely," the Alamillo Entities were not entitled to relief.  The court found it was unreasonable for Alamillo to conclude the entities were not properly served (and therefore unreasonable for them not to respond to the complaint) because Pereira was still listed as each entity's agent for service of process when Alamillo learned of the complaint and because the Alamillo Entities were no longer operating at the business address listed in their statements of information.  Moreover, the court pointed out, Pereira testified he emailed the complaint not only to Alamillo, but also to Roger Brothers, who was a partner at the law firm that subsequently represented the Alamillo Entities in their motion to set aside the default judgment (and represents them on appeal).  The trial court ruled Alamillo's apparent failure to consult with Brothers before deciding to ignore the lawsuit showed "negligence in ascertaining the law."  The Alamillo Entities timely appealed from the order denying their motion.

5

# DISCUSSION

A. *The Trial Court Did Not Err in Denying the Alamillo Entities' Request for Relief on Equitable Grounds*

The Alamillo Entities no longer argue that their motion, filed more than six months after the court entered the defaults but less than six months after the court entered the default judgment, was timely under section 473. (See *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 39 (*Kramer*) ["The six-month period for granting relief under section 473, subdivision (b), 'runs from entry of default, not entry of judgment.'"]; *Rutan v. Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 970 ["The general rule is that the six-month period within which to bring a motion" for discretionary relief under section 473, subdivision (b), "runs from the date of the default and not from the judgment taken thereafter."]; see also *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 (*Rappleyea*) ["more than six months had elapsed from the entry of default, and hence [discretionary] relief under section 473 was unavailable"].) The Alamillo Entities' only argument on appeal is the one they did not make until their reply brief in the trial court: They are entitled to discretionary relief on equitable grounds based on "extrinsic mistake." That argument fails.

1. *Applicable Law and Standard of Review*

"After six months from entry of default, a trial court may still vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea*, *supra*, 8 Cal.4th at p. 981; see *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910 (*Luxury Asset Lending*); *Bae*

*v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97.) "One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea*, at p. 981; accord, *Kramer*, *supra*, 56 Cal.App.5th at p. 30; *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246.) "'[E]xtrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present.'" (*Mechling*, at p. 1246; accord, *Kramer*, at p. 30; see *Luxury Asset Lending*, at p. 911 ["'"Extrinsic mistake involves the excusable neglect of a party."'"].)

As the Supreme Court explained in *Rappleyea*, where, as here, "a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances. '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.'" (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981-982; accord, *Kramer*, *supra*, 56 Cal.App.5th at p. 29.)

"[T]o further the foregoing policy," courts have adopted "a stringent test to qualify for equitable relief from default on the basis of extrinsic mistake" after a court has entered judgment. (*Rappleyea*, *supra*, 8 Cal.4th at p. 982.) "'First, the defaulted party must demonstrate that it has a meritorious case. Second[ ],

the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action.  Last[ ], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.'"  (*Ibid.*; see *Luxury Asset Lending*, *supra*, 56 Cal.App.5th at p. 911; *Bae v. T.D. Service Co. of Arizona*, *supra*, 245 Cal.App.4th at p. 100; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 833.)[3]

"[T]he trial court's findings of fact pertaining to the existence of . . . extrinsic mistake are reviewed for substantial evidence."  (*Kramer*, *supra*, 56 Cal.App.5th at p. 28.)  "But our overall review of the trial court's application of those findings is for an abuse of discretion."  (*Ibid.*; see *Rappleyea*, *supra*, 8 Cal.4th at p. 981; *Luxury Asset Lending*, *supra*, 56 Cal.App.5th at p. 907.)

2.      *There Was No Extrinsic Mistake*

As the Alamillo Entities point out, to show a "meritorious case" for purposes of obtaining relief from default on the grounds of extrinsic mistake, "only a minimal showing is necessary." (*Mechling v. Asbestos Defendants*, *supra*, 29 Cal.App.5th at p. 1246; see *Rappleyea*, *supra*, 8 Cal.4th at p. 983 [answer denying, admitting, and otherwise responding to the allegations, plus counsel's declaration stating he believed the defendant had "'a very good (and certainly justiciable) defense to the Plaintiff's claim,'" was sufficient].)  In the trial court, the Alamillo Entities

[3]      At least one court has "question[ed] the appropriateness of applying this stringent test" to cases involving an "unusual set of facts," for example, "where a nonparty—who was not served with the complaints, defaults, or default judgments—seeks equitable relief."  (*Mechling v. Asbestos Defendants*, *supra*, 29 Cal.App.5th at p. 1246, fn. 3.)  This case involves no such unusual facts.

contended that Southwest, 325 West Channel Rd., and 361 West Channel Rd. had a meritorious case because they did not execute the agreement alleged in the complaint. They also contended 325 West Channel Rd. and 361 West Channel Rd. did not have any employees and therefore had no need for workers' compensation or employers' liability insurance. But even assuming these three entities had a meritorious case, no one argued Alamillo Rebar did. Thus, the trial court did not err in denying Alamillo Rebar's request to set aside its entry of default and vacate the default judgment against it.[4]

Moreover, none of the Alamillo Entities presented a satisfactory excuse for failing to respond to the complaint. The Alamillo Entities' primary "excuse" was that Alamillo did not believe service of the summons and complaint on Pereira—at the time no longer employed by the Alamillo Entities but admittedly still their designated agent for service of process—was proper. But Alamillo was wrong. (See Corp. Code, §§ 1502, subd. (e) ["[i]n order to change its agent for service of process or the address of the agent, the corporation must file a current statement containing all the information required" by section 1502, subdivisions (a) and (b) of the Corporations Code], 1701 ["Delivery by hand of a copy of any process against the corporation (a) to any natural person designated by it as agent . . . shall constitute valid service on the corporation."], 17701.16

---

[4] The Alamillo Entities forfeited their contention, raised for the first time on appeal, Alamillo Rebar had a meritorious case. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 137, fn. 5.)

9

[same for a limited liability company].)  Indeed, the Alamillo Entities do not contend service on Pereira was improper.

The doctrine of equitable relief based on extrinsic mistake was never "meant to extend relief to defendants who fail to file an answer because they are ignorant of the law." (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147; see *ibid.* [that the defendant was an Australian citizen "unfamiliar with California judicial proceedings" did not justify failing to file a responsive pleading to the complaint].)  As one court has explained, "Even under the more lenient section 473, subdivision (b), '[w]hen a default is the result of one party . . . failing to exercise diligence to ascertain what the law requires of them, trial courts . . . should not . . . grant that party relief from default.' [Citation.]  Indeed, mistake is not a ground for relief when it ""is simply the result of . . . general ignorance of the law, or unjustifiable negligence in discovering the law . . . .""" (*Kramer*, *supra*, 56 Cal.App.5th at pp. 31-32; accord, *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206; see also *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901, fn. 8 ["'To the extent that the court's equity power to grant relief differs from its power under section 473, *the equity power must be considered narrower, not wider.*'"].)

Alamillo's decision to ignore the summons and complaint because of his mistaken belief the Alamillo Entities were not properly served was not a satisfactory excuse for purposes of obtaining relief based on extrinsic mistake.  (See *Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1206 [defendant's "unsupported, subjective belief that she had not been served until" the default prove-up hearing did not "demonstrate that the default judgment was entered as result of mistake, inadvertence, surprise or excusable neglect"]; see also *Kramer*, *supra*,

56 Cal.App.5th at p. 30 [defendant's decision not to participate in a lawsuit "because [she] erroneously believed that '[the p]laintiff was simply prosecuting this case against a defunct entity,' and . . . was unaware that she 'was potentially personally liable,'" was not an extrinsic mistake].) Alamillo's decision was particularly inexcusable in light of Pereira's uncontradicted deposition testimony he sent a copy of the complaint by email to Alamillo and to counsel for Alamillo Rebar. Alamillo did not explain whether he consulted with the attorney or, if he did, why he still chose not to respond to the complaint. The trial court correctly determined that, at best, Alamillo was "negligen[t] in ascertaining the law" and that his explanation was not satisfactory under the circumstances. (See *Kramer*, at p. 32 ["[c]ountenancing a litigant's blatant disregard of the judicial process and rules . . . invites other litigants to ignore the laws and rules and renders the process unfair to most other litigants and counsel who endeavor to comply with them"; "undermines trial courts' ability to manage their caseloads and, in turn, to serve other litigants in a timely way"; and thwarts policies that "favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures," internal quotation marks omitted].)

Nor was Alamillo's statement in his declaration he was too busy to respond to the complaint because he was "closing down [Alamillo Rebar's] business and resolving its outstanding obligations" a satisfactory excuse. "'[T]he mere fact that the [defendant] is busy and occupied with other affairs'" is generally insufficient "'to constitute an excuse for his neglect to answer a summons within time . . . . If the rule were otherwise, few

11

judgments by default would stand, for most men [and women] could plead their business as an excuse for not answering the summons of the court.'" (*Davis v. Thayer* (1980) 113 Cal.App.3d 892, 909; see *Bellm v. Bellia* (1984) 150 Cal.App.3d 1036, 1038 ["The press of business is not a sufficient excuse for failing to respond to service of a summons and complaint."].)  In light of the strong policy favoring the finality of judgments after the six-month period in section 473, subdivision (b), the trial court did not abuse its discretion in ruling the Alamillo Entities failed to demonstrate a satisfactory excuse for not responding to the complaint.

> B. *The Alamillo Entities' Argument the Complaint Failed To State a Cause of Action Against Certain of the Entities Is Forfeited and Meritless*

The Alamillo Entities also contend, for the first time on appeal, the complaint failed to state a cause of action against Southwest, 325 West Channel Rd., or 361 West Channel Rd.  The Alamillo Entities, however, forfeited this argument by not making it in the trial court.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 137, fn. 5.)

The argument also lacks merit.  "Because [a] default confesses those properly pleaded facts . . . they are treated as true for purposes of obtaining a default judgment. . . .  [¶]  [But] if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand.  On appeal from the default judgment, '[a]n objection that the complaint failed to state facts sufficient to constitute a cause of action may be considered.'" (*Kim v.*

12

*Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281-282, italics omitted; accord, *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1013; *Falahati v. Kondo*, *supra*, 127 Cal.App.4th at pp. 829-830.)

According to the Alamillo Entities, the complaint failed to state a cause of action against Southwest, 325 West Channel Rd., or 361 West Channel Rd. because the only signatory to the insurance agreement Old Republic attached to its complaint and based its causes of action on was Alamillo Rebar. Maybe so. But Old Republic's theory of liability against Southwest, 325 West Channel Rd., and 361 West Channel Rd. did not depend on whether they were signatories to the agreement. Old Republic's theory of liability was that the Alamillo Entities were alter egos of each other and therefore liable for the debts, obligations, and duties of one another. (See *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418-419 ["[a] claim based upon an alter ego theory is not itself a claim for substantive relief," but "a procedural device by which courts will disregard the corporate entity in order to hold the alter ego individual liable on the obligations of the corporation"].) The Alamillo Entities do not address this theory of liability or argue Old Republic's alter ego allegations were insufficient.

Which, in any event, they were. Old Republic alleged Alamillo Rebar and the other entities were "mere shells, instrumentalities or conduits for a single venture, common enterprise, [and] business"; used "the same tangible and intangible assets, including equipment, employees, and goodwill"; lacked "sufficient or adequate capitalization"; were "conceived, intended, and utilized . . . to avoid individual liability"; "failed to observe corporate formalities"; "caused assets of [each other] to be

13

transferred to . . . each of them, without adequate consideration"; were "subterfuges for illegal, fraudulent and/or otherwise wrongful transactions"; and paid excessive compensation to insiders and shareholders (presumably Alamillo) "at a time when [they] were insolvent . . . that might otherwise have been used to satisfy creditors' claims."  Old Republic also alleged that recognizing the separate existence of the entities "would sanction a fraud or promote an injustice."  (See *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 235 [plaintiff adequately pleaded alter ego liability by alleging that the corporate entity was a "mere shell and conduit" for the individual defendant's affairs, was "inadequately capitalized," and "failed to abide by the formalities of corporate existence"; that the individual "used [the entity's] assets as her own"; and that "recognizing the separate existence . . . would promote injustice"]; cf. *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 696-697 [plaintiff did not adequately plead alter ego liability where the plaintiff alleged only that the defendants owned all the entity's stock and made all the management decisions, and did not allege that ""'adherence to the fiction of the separate existence of the corporation would promote injustice . . . or bring about inequitable results""'].)  Had the Alamillo Entities wanted to challenge Old Republic's alter ego allegations, they should have responded to the complaint.

## DISPOSITION

The order is affirmed. Old Republic is to recover its costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


WISE, J. [*]

---

[*]     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.