Filed 12/31/25  Planful v. Global Growth Holdings CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PLANFUL, INC., <br>     Plaintiff and Respondent, <br> v. <br> GLOBAL GROWTH HOLDINGS, INC. <br>     Defendant and Appellant. | A172699 <br><br> (San Mateo County Super. Ct. No. 23CIV03262) |

The trial court entered a default judgment against Global Growth Holdings, Inc. (Global Growth) after it failed to answer a complaint filed against it by Planful, Inc. (Planful).  Global Growth challenges the trial court's subsequent denial of its motion to set aside the default.  We affirm.

**BACKGROUND**

Planful filed a breach of contract action against Global Growth, alleging that Global Growth failed to pay Planful under the terms of a subscription agreement for a technological program.  Global Growth defaulted and the trial court entered judgment against it on February 2, 2024.

On October 2, 2024, Global Growth moved to set aside the default under Code of Civil Procedure section 473, subdivision (b) (section 473(b)).[1]

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

1

Global Growth asserted that its agent for service of process did not notify it of Planful's action and it only learned of the action when Planful filed a domestication of judgment in Global Growth's home state of North Carolina.

In support, Global Growth submitted a declaration by its chairman, Greg Lindberg, stating that Global Growth first became aware of the action on July 18, 2024, and that the failures of notice were "due to errors from the registered agent." Lindberg did not describe the nature of those errors, saying only that "[i]n 2023 a whole list of companies including [Global Growth] were moved to CT Corp. [Global Growth's agent for service of process]" and neither Global Growth's outside counsel nor in-house counsel "receive[d] any of the registered agent notices." Lindberg referred to a purportedly attached—but actually missing—email between Global Growth's former general counsel and Global Growth's outside counsel in which the general counsel reportedly stated: " 'There definitely is some issue with SoPs—neither [outside counsel] nor I received any notice of this lawsuit until it became a judgment.' "[2] Global Growth also included a declaration from its current attorney, but that declaration contained no facts about Global Growth's previous failure to receive notice of the lawsuit or its actions once notice was received.

In opposition, Planful noted that it served the Corporation Trust Company (CTC), Global Growth's registered agent for service of process, with notice of this lawsuit on five separate occasions. Planful also asserted that the motion to set aside the default was untimely because section 473(b) imposes a deadline of six months after the judgment was taken; the judgment here was entered on February 2, 2024, but Global Growth did not file its

---

[2] Global Growth does not explain what "SoPs" are, but Planful postulates that it may refer to " 'standard operating procedures.' "

2

motion until October 2, 2024. Planful added that Global Growth acknowledged in its motion that it became aware of the action on July 18, 2024. Planful also objected to Lindberg's declaration on various grounds, including lack of personal knowledge, lack of foundation, hearsay, and violation of the best evidence rule.

In reply, Global Growth argued that a court has the inherent power to grant equitable relief at any time on the basis of extrinsic fraud or mistake. Global Growth reiterated that it did not receive notice of the action because of an issue with its agent for service of process, and asserted that it filed the motion "as soon as practically possible (some delay in finding California attorney)."

The trial court denied Global Growth's motion on the ground that it was untimely. The court also sustained nearly all of Planful's objections to the Lindberg declaration, including those made on the basis of lack of personal knowledge, lack of foundation, and the best evidence rule. Nonetheless, the court ruled that even if the declaration were considered, the result would be the same because Lindberg attributed Global Growth's predicament to " 'errors from the registered agent' " but provided no further details or evidence from the registered agent. Lastly, the court noted that Global Growth improperly raised for the first time on reply the issue of the court's inherent equitable power to grant relief from default and a previously uncited case (i.e. *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283 (*Moghaddam*)). Regardless, the court went on to analyze *Moghaddam* and stated that it did not change the court's ruling.

## DISCUSSION

Global Growth argues, first, that the trial court should have granted its motion to set aside the default because the court lacked jurisdiction to enter

3

the default judgment in the first place in light of the parties' diversity of citizenship under section 1332(a) of title 28 of the United States Code. Second, Global Growth contends that it acted diligently and established its entitlement to relief under section 473(b). Finally, Global Growth asserts for the first time on appeal that it was entitled to relief under Code of Civil Procedure section 473.5. We take up these arguments in turn.

## I.

Global Growth's contention that a state court lacks jurisdiction to adjudicate disputes between parties with diverse citizenship is meritless, as it tacitly concedes by declining to reprise the argument in its reply brief. "[F]ederal diversity jurisdiction permits state and federal courts to exercise *concurrent* jurisdiction." (*Jones v. Sheehan, Young & Culp, P.C.* (5th Cir. 1996) 82 F.3d 1334, 1338, fn. 3 [citing *Colorado River Water Conservation Dist. v. U.S.* (1976) 424 U.S. 800, 809].)

## II.

Under section 473(b), a court may relieve a party from a "judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." This relief is mandatory if accompanied by an attorney's affidavit of fault, unless the court finds the default or dismissal was not caused by the attorney's mistake, inadvertence, surprise, or neglect.[3] (*Ibid.*) Absent such an affidavit, relief is discretionary. (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 340.) An application for discretionary relief must be made "within a reasonable time, not exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (*Ibid.*) "This six-month time limitation is

---

[3] The declaration from Global Growth's counsel was not an affidavit of fault within the meaning of this section.

4

jurisdictional; the court has no power to grant relief under section 473 once the time has lapsed." (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928 (*Austin*).)

The moving party bears the burden of establishing its entitlement to relief. (*Austin, supra*, 244 Cal.App.4th at p. 928.) The moving party must also show that it was diligent in seeking relief after it discovered the default. (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410 (*Hopkins*).) "Whether the moving party has successfully carried this burden is a question entrusted in the first instance to the discretion of the trial court; its ruling will not be disturbed in the absence of a demonstrated abuse of that discretion." (*Ibid.*)

Global Growth does not dispute that the default was entered on February 2, 2024, the deadline to file a motion for relief from default under section 473(b) was August 2, 2024, and it did not file this motion until October 2, 2024. It argues that it did not unreasonably delay in filing its motion because it only received notice of the judgment on July 18, 2024.

Courts have consistently held, however, that relief under section 473 should be denied where there was an unexplained delay of three months or more between the time a party became aware of the default and the time it sought relief. (*Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1184; *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.) Here, Global Growth waited nearly three months after it learned of the default to file its motion. The only explanation offered for this delay was the unelaborated statement in Global Growth's reply that there was "some delay in finding [a] California attorney." Without more, the trial court could reasonably conclude that Global Growth was not diligent in seeking relief after discovering the default.

Citing *Moghaddam, supra,* 142 Cal.App.4th 283, Global Growth argues in the alternative that, irrespective of any statutory timelines, a court has inherent, equitable power to set aside a judgment at any time.[4] *Moghaddam* does not establish an abuse of discretion by the trial court here.

In *Moghaddam*, the court noted that when a motion to set aside default is made more than six months after the default was entered, the motion is not directed to the court's statutory power to grant relief under section 473 but to the court's inherent, equitable power to grant relief from a default or default judgment obtained by extrinsic fraud or mistake. (*Moghaddam*, *supra*, 142 Cal.App.4th at p. 290.) "Extrinsic fraud only arises when one party has in some way fraudulently been prevented from presenting his or her claim or defense." (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300.) Extrinsic mistake requires a showing that defendant has "(1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.' " (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246 (*Mechling*).)

Starting with extrinsic fraud, Global Growth presented no evidence that Planful fraudulently prevented Global Growth from presenting its claim or defense. On the contrary, the record indicates that Planful served Global Growth's agent for service of process on at least five occasions.

---

[4] Global Growth also asserts the trial court erred in not considering this argument, which it raised for the first time in its reply in support of its motion to set aside default. Global Growth's contention lacks merit. Even though the argument was belatedly raised, the court still considered whether it should exercise its inherent, equitable power to set aside the default.

As for extrinsic mistake, the trial court could reasonably conclude that Global Growth made an inadequate showing to excuse its failure to respond to the original action and did not exercise diligence in seeking to set aside the default once it had been discovered. (See *Mechling*, *supra*, 29 Cal.App.5th at p. 1246.) It is well established that " '[a] party who seeks to set aside a default judgment pursuant to the court's equity power must make a *substantially stronger showing* of the excusable nature of his or her neglect than is necessary to obtain relief under . . . section 473.' " (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29, italics added.) This is because there is a strong public policy in favor of the finality of judgments once the time to seek relief under section 473 has passed. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982.) Thus, it is only in " 'exceptional circumstances' " that such equitable relief should be granted. (*Ibid.*)

Here, the only substantive evidence submitted by Global Growth in support of its section 473 motion was the Lindberg declaration. This declaration, as the trial court found, suffered from a number of deficiencies. Among other things, there is no indication that Lindberg had personal knowledge of the facts to which he attested, including the alleged facts that Global Growth's registered agent CTC committed "errors" and that the transfer of a "whole list of companies including [Global Growth]" to CTC resulted in Global Growth's outside counsel "not receiv[ing] any of the registered agent notices." Specifically, despite Lindberg's assertion that he had personal knowledge of these matters, nothing in the declaration shows that he actually perceived these events, and he did not indicate how he acquired any of this information. (See *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 692, fn. 1 [bald recital regarding personal knowledge of an affidavit's matters absent an actual showing of personal

7

knowledge is inadequate].)  Additionally, although Lindberg purported to attach an email from Global Growth's former general counsel that referenced "some issue with SoPs" and stated that neither the general counsel nor Global Growth's outside counsel received notice of this lawsuit until it became a judgment, the email was not actually attached to the declaration.

In any event, the trial court held in the alternative that, "even if the Lindberg Declaration were considered, the result would be the same."  Here too we discern no abuse of discretion.[5]  Lindberg's vague reference to "errors" by CTC, lack of explanation regarding how a transfer of Global Growth to CTC resulted in a failure to receive any registered agent notices, and cryptic mention of issues with " 'SoPs,' " provide little illumination about what occurred.  Global Growth also failed to provide any declarations by CTC, its former general counsel, or its outside counsel to provide more specificity. (See *Hopkins*, *supra*, 200 Cal.App.4th at p. 1410 [showing of mistake, inadvertence, surprise or neglect requires specificity]; *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 414 [the inadvertence contemplated by section 473 does not mean mere inadvertence in the abstract].)  Accordingly, the trial court did not abuse its discretion when it concluded that the Lindberg declaration failed to make an adequate showing.

## III.

Lastly, Global Growth notes in passing that under section 473.5, it can seek relief from default within two years after the default judgment was entered or 180 days after service of a written notice that a default judgment has been entered, whichever is earlier, if it demonstrates that it lacked actual notice of the proceedings.  We decline to address this argument because

---

[5] For this reason, we need not resolve Global Growth's claim that the trial court erred in sustaining the objections.

Global Growth failed to seek relief under this statute in the trial court. (See *Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44 ["Generally, issues not raised in the trial court cannot be raised for the first time on appeal"].) Global Growth points out that it referred to "section 473, *et seq.*" in its motion to set aside the default, but this sweeping reference did not impose on the trial court a duty to search the code for potential bases for relief that Global Growth's own counsel did not brief or argue. Global Growth never called the trial court's attention to section 473.5 nor contended that it was entitled to relief under it.

We note in closing that the result in this case is the product of missed opportunities. Global Growth waited nearly three months to seek relief after the date it claimed to learn of the default. When it finally brought the motion, its efforts to document how the error occurred and the reasons for its delay were less than vigorous. It also neglected to invoke a different statute that might have offered it a better opportunity for relief. Under these circumstances, we can find no abuse of discretion.

## DISPOSITION

The judgment is affirmed. Planful is entitled to recover its costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
MOORMAN, J. *

---

*Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9